UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X  Civil Action No.
WILLIAM HICKS,

                              Plaintiff,        Plaintiff Demands Jury Trial

   -against-

SAMARITAN DAYTOP VILLAGE, INC.,        **COMPLAINT**
MARGARITA CRESPO, and TERRENCE JUDD,

                             Defendants.
------------------------------------------------------------------X

Plaintiff WILLIAM HICKS by her attorneys, DeTOFFOL & GITTLEMAN Attorneys at Law, hereby complains of Defendants, at all times relevant and material and upon information and belief, as follows:

## Nature Of The Case

1. Plaintiff complains of violations to The Americans With Disabilities Act 42 U.S.C. § 12112, and based upon the supplemental jurisdiction of this Court pursuant to Gibb, 38 U.S. 715 (1966), the New York State Executive Law §296 (1) discrimination & (6) aid and abet, and Administrative Code of City of New York § 8-107 (1) discrimination & (6) aid and abet, seeking relief and damages to redress the injuries Plaintiff has suffered as a result of being discriminated, retaliated, and wrongfully terminated based on his disability.

## Jurisdiction & Venue

2. Plaintiff is an individual residing within Kings County in the State of New York.

3. Defendant SAMARITAN DAYTOP VILLAGE, INC. was a duly registered domestic business corporation under the laws of the State of New York, domiciled in Kings County, State of New York, and doing business and regularly transacting and conducting business therein.

4. Defendant MARGARITA CRESPO, is an individual residing within Kings County in the State of New York.

5. Defendant TERRENCE JUDD, is an individual residing within Kings County in the State of New York.

6. Plaintiff filed a Charge in the Equal Employment Opportunity Commission ("EEOC") on or about April 21, 2022, and was conferred and received from the EEOC with a Notice of Right to Sue dated January 26, 2023.

7. The EEOC Notice of Rights under ADA Amendments Act of 2008 (ADAAA), promulgating that the ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADAAA, where a disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability – and that these terms are redefined, and it is easier to be covered under the new law.

8. For failure to accommodate claim, the standard for either "actual" or "record of" a disability is marked by the following:

(i) The limitations from the impairment no longer have to be severe or significant for the impairment to be considered substantially limiting.
(ii) In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), "major life activities" now include the operation of major bodily functions, such as: functions of the immune system, special sense organs and skin; normal cell growth; … .
(iii) Only one major life activity need be substantially limited.
(iv) An impairment that is "episodic" (e.g., epilepsy, depression, multiple sclerosis) or "in remission" (e.g., cancer) is a disability if it would be substantially limiting when active.
(v) An impairment may be substantially limiting even though it lasts or is expected to last fewer than six months.

In demonstrating discrimination for being "regarded as" disabled by the employer, individuals can meet the definition of disability if an employment action was taken because of an "actual" or "perceived" impairment *supra* (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

(i) "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
(ii) The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively BOTH transitory (lasting or expected to last six months or less) AND minor.
(iii) A person is not able to bring a failure to accommodate claim if the individual is discovered only under the "regarded as" definition of "disability."

Although the amended ADA states that the definition of disability "shall be construed broadly" and should not demand extensive analysis" some courts require specificity in the complaint explaining *how an impairment substantially limits a major life activity* or what facts indicate the *challenged employment action was because of the impairment.*

9. Jurisdiction of this action is conferred upon the Court as this action involves a ripe federal question and pendant jurisdiction to New York State law as set forth in the Counts herein.

10. Venue is proper in that the parties domicile and the events occurred in the State of New York, in Kings County.

**Parties**

11. Mr. HICKS is a male individual 62 years of age, residing in the County of Kings, State of New York.

12. Respondent Employer SAMARITAN DAYTOP VILLAGE, INC. is a domestic not for profit corporation duly formed, and doing business under the laws of the State and City of New York, in the County of Queens.

13. The Employer employed more than 15 employees nationwide and also within the State and City of New York, in the County of Queens.

14. The Employer held itself out to the public as an eleemosynary business receiving federal, state and city funding to provide comprehensive human services with more than 60 locations across New York City and beyond including residential housing for the homeless population, having its central administrative office 138-02 Queens Boulevard, Briarwood, NY 11435-2647 ("Headquarters").

## Background

15. Our Plaintiff Mr. Hicks is well credentialed with an associate and bachelors degree and experience in the field of residential homeless housing operations.

16. In January 2019 the Respondent hired as its employee Mr. Hicks as a Residential Aide, when his good work ethic earned him promotion to Case Manager in October 2020 and in that year earned performance awards.

17. Mr. Hicks caseload began with 25 clients assisting them with searching for and applying for permanent treatment services and housing, and resident screening and house management.

18. Respondent did not issue or render any uncontested negative performance reviews to him as its Case Manager, however in mid 2021 while Mr. Hicks was assigned to a location in the process of Respondent's wind down due to CoVid19 restrictions, his work station and his computer equipment its functionality was largely inoperative.

19. After that wind down he was re-assigned and in the process of being phased into a new case load of existing incomplete files at the Samaritan Daytop Village location at 225 East 53rd Street, New York, New York ("Workplace"), all without training or accessbility to the fellow Case Manager who had been handling the case load.

4

20. Mr. Hicks supervisor Senior Case Manager Mr. Ernest Scott assured Mr. Hicks that he was performing well given the circumstances of the transferred caseload's disarrayed condition.

### **Disability** (Cerebral Stroke)

21. There on Tuesday November 30, 2021 he experienced the onset to feeling ill and was examined by the Respondent's on-site medical physician who determined that his symptoms were indicative of an acute stroke.

22. Mr. Hicks was instructed by a supervisor to call in later to advise if he was able to cover his shift the next day, and transported by ambulance from the Workplace to NYU Langone Hospital, for immediate and emergent medical testing and treatment.

23. While at the hospital, that evening he was diagnosed with having had an ischemic stroke. Mr. Hicks advised Respondent's Assistant Program Director Margarita Crespo, of his stroke diagnosis and that he would not be attending work the next day.

24. On Wednesday December 1, 2021 Mr. Hicks was discharged with a treatment plan and a letter from the hospital physician stating that, "In my medical opinion he may return to work on 12/3/21".

### **Discrimination**

25. On Friday December 3, 2021, Mr. Hicks returned to his work station at the Workplace with his stroke condition manifesting only residual right-sided numb and cold sensation, and stable prognosis with prescription medication management.

26. Upon his return he logged on to his assigned computer he immediately noticed an email dated Thursday December 2, 2021 indicating that his assigned case files were distributed away from him and assigned to his fellow coworkers.

27. Around 2:30 p.m., Mr. Hicks was escorted by a supervisor Respondent's Senior Case Manager Mr. Ernest Scott, to the office of the Respondent's Assistant Program Director Ms. Margarita Crespo, for a meeting attended by Ms. Crespo, Mr. Scott and the Program Director Terrence Judd.

28. While there the Vice President from Respondent's Human Resource Administration department (name "Lisa") spoke to Mr. Hicks via teleconference speakerphone. She stated that Ms. Crespo alleged that he was "not making any progress" with his work at the Respondent organization and therefore recommended terminating him immediately. Mr. Hicks was shocked by both the allegations and termination, and asserted to them that he was experiencing difficulty asserting an opposing response to such accusation, due to its surprise and his recent stroke symptoms.

29. When the meeting was over, Mr. Terrence Judd, the Respondent's Program Director escorted Mr. Hicks to the Workplace facility exit and stated that Mr. Hicks was no longer allowed on site.

30. After that Mr. Hicks did not receive any formal written determination stating the Respondent's official or formal reason for his employment termination.

31. Respondent's proximate termination to his return from the hospital where he had been treated for and diagnosed with a life threatening disability, highly correlates to Respondent's termination to have been motivated by Respondent's animus against his disability.

32. With a physician's note stating he could return to work, the Respondent's would not have had to make a reasonable accommodation for him to continue his work function.

33. Mr. Hicks had found great satisfaction and self worth and dignity from performing his job. He had always worked with enthusiasm and a strong commitment to helping the Respondent's clients connect with treatment and housing services.

34. His demonstrated tenure would have further career development and promotions possible for with the Respondent's organization.

35. His lack of income from Respondent's unlawful termination has added great stress on his emotion well being, with worry about keeping his own housing, medical care and earnings to support his basic needs.

36. Mr. Hicks complied by returning to his position just days of after the onset of his life threatening and now permanent mild stroke condition, a point in time when Respondent was aware and did not want to appease any accommodation, even though he did not need an accommodation.

37. Respondent terminated Mr. Hicks stating decline in work activity, but Respondent's stated reason for termination is false because there was no lack in Respondent's performance given the poor condition of the files assigned to him.

38. Respondent's stated pretext for his termination belies truth, and lays evident the true motivation for Respondent's decision to fire Mr. Hicks, which is that the Respondent's supervisors had an unremitting false, misplaced and untoward view that Mr. Hicks stroke disability somehow presented an endangerment in the Workplace.

## **Damages**

39. Mr. Hicks earned more the n $25.00 per hour on a full time basis, plus attendant valuable employment benefits.

40. He has been unable to mitigate the damage from Respondent's unlawful termination in finding replacement employment.

41. It is expected that a significant amount of time will pass before he attains new commensurate employment at or exceeding his rate of pay at termination, all the while continuing to be deprived from lost earnings.

42. As for past lost earnings, Mr. Hicks made requests to the Respondents that they remunerate him front pay compensation for 5 years into the future at the lost rate $50,000 per year, totaling $250,000.

43. While Plaintiff was a protected class qualified individual, capably performing his job duties, the Respondents' unlawful hostile actions to the extent required included failing to provide a reasonable accommodation based on his emergent stroke disability terminations caused Plaintiff to feel emotionally disconcerted and uncomfortable by Respondent's unfair and different handling, necessitating his professional care by licensed Masters of Social Work therapists for counseling and medication prescription for situational anxiety and depression caused by Respondent's unlawful actions and job termination.

44. Respondent was completely unreceptive to Plaintiff's disability, and instead discriminated against him by treating him in a hostile manner different from other employees and terminating his employment, causing him to suffer economic and pecuniary loss, as well as additional emotional distress and humiliation.

45. Mr. Hicks aforementioned disability qualified his status under federal, and New York State and New York City laws protecting him from disparate treatment due to his disability.

46. Our Plaintiff Mr. Hicks was a hard worker, timely completing his assignments and more, yet Respondent's discrimination against him for his disability resulted in their terminating his employment.

47. As a result of the unlawful acts and conduct complained of herein, Plaintiff has suffered pecuniary economic losses, as well as compensable emotional pain, suffering, and emotional loss in enjoyment of life damages.

48. Insofar that Respondents' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff asserts a punitive damage assessment against Respondents.

49. In sum, Plaintiff seeks recovery for damages to past and future wages and earnings loss, emotional distress damages, punitive assessment, and attorneys' fees.

## COUNT ONE FOR DISABILITY DISCRIMINATION
## UNDER FEDERAL AMERICANS WITH DISABILITIES ACT
### (Against Respondent Entity)

50. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Charge.

51. The Americans With Disabilities Act 42 U.S.C. § 12112 et seq. ("ADA") provides that:

"No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or *discharge of employees*, employee compensation, job training, and other terms, conditions, and privileges of employment"

52. Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12111(8).

53. Respondents violated the section cited herein as set forth and discriminated against Plaintiff because of his disability by discharging him because of his medical condition.

## COUNT TWO FOR DISABILITY DISCRIMINATION
## <u>UNDER NEW YORK STATE EXECUTIVE LAW</u>
### (Against All Respondents)

54. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Charge as if more fully set forth herein at length.

55. Executive Law § 296 provides that :

"1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

56. Respondents violated the section cited herein as set forth and engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his disability and discharging her.

57. Plaintiff hereby makes this claim against Respondents under all of the applicable paragraphs of Executive Law § 296.

## COUNT THREE FOR AIDING & ABETTING DISABILITY DISCRIMINATION
## <u>UNDER NEW YORK STATE EXECUTIVE LAW</u>
### (Against All Defendants)

58. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Charge.

59. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

60. Respondents engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

### COUNT FOUR FOR DISABILITY DISCRIMINATION
### <u>UNDER THE NEW YORK CITY ADMINISTRATIVE CODE</u>
### (Against All Respondents)

61. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Charge.

62. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice:

"(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

63. Respondents engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of his race.

### COUNT FIVE FOR AIDING & ABETTING DISABILITY DISCRIMINATION
### <u>UNDER THE NEW YORK CITY ADMINISTRATIVE CODE</u>
### (Against All Respondents)

64. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Charge.

65. Under New York City Administrative Code Title 8-107(19) Interference with protected rights:

It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

66. Respondents violated the section cited herein as has already been set forth.

### COUNT SIX FOR INTERFERENCE WITH THEN-CURRENT FMLA RIGHTS
### UNDER FEDERAL TITLE 29 USC 2615 (a)
### (Against All Respondents)

67. Plaintiff realleges the preceding paragraphs of this Complaint.

68. Section 29 U.S.C. 2615(a), concerning interference provides that:

"(a) Interference with rights.
(1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title [29 USCS §§ 2611 et seq.].
(2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this title [29 USCS §§ 2611 et seq.].

69. By firing this Employee, the Respondents interfered with his exercise of his then-current Family and Medical Leave Act rights in violation of the anti-interference provisions of §105 of the FMLA of 1993, 29 U.S.C. §2615(a)(2) and/ or of the Department of Labor's anti-retaliation and anti-discrimination regulation 29 C.F.R. §825.220.

70. As a proximate result of this interference, Plaintiff has been damaged in an amount to be determined at the time of trial.

### COUNT SEVEN FOR INTERFERENCE WITH PROCEEDINGS
### UNDER FEDERAL TITLE 29 USC 2615 (b)
### (Against All Respondents)

71. Plaintiff realleges the preceding paragraphs of this Complaint.

72. Section 29 U.S.C. 2615(b), concerning interference provides that:

"(b) Interference with proceedings or inquiries. It shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual—
(1) has filed any charge, or has instituted or caused to be instituted any proceeding, under or

related to this title [29 USCS §§ 2611 et seq.]

(2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this title [29 USCS §§ 2611 et seq.]; or

(3) has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under this title [29 USCS §§ 2611 et seq.]."

73. When Respondents decided to fire Plaintiff it anticipated or feared that he would use in the future additional leave under the Family and Medical Leave Act of 1993. The allegations of this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation and/ or discovery.

74. By firing Employee, the Respondents interfered with his exercise of his then-future Family and Medical Leave Act rights in violation of the anti-interference provisions of §105 of the FMLA of 1993, Section 29 U.S.C. 2615(b)(1), and/ or of the Department of Labor's anti-retaliation and anti-discrimination regulation 29 C.P.R. §825.220.

75. As a proximate result of this interference, Plaintiff has been damaged in an amount to be determined at the time of trial.

## Prayer For Relief

WHEREFORE, Plaintiff respectfully demands against Defendants on all Counts in an amount which exceeds the jurisdiction of all lower courts and issue:

(a) An award to Plaintiff of compensatory damages in an amount to be determined at trial for all damages including but not limited to economic damages for lost past back pay and future front pay wages and attendant benefits

(b) An award to Plaintiff of compensatory damages in an amount to be determined at trial for all damages including but not limited to past and future non-economic damages for humiliation, pain and suffering and emotional distress sustained;

(c) An award to Plaintiff of the costs of this action, including their reasonable attorney's fees to the fullest extent permitted by law;

(d) An award of punitive damages in an amount to be determined at trial; and

(e) Such other and further relief as this Court deems necessary and proper.

### Jury Demand

Plaintiff demands a jury on all issues to be tried.

Dated: New York, New York
February 21, 2023

                                                Respectfully Submitted,

                                                s/David DeToffol, Esq.

                                                David J. DeToffol, Esq.
                                                DeTOFFOL & ASSOCIATES, Attorneys at Law
                                                125 Maiden Lane – Suite 5C
                                                New York, New York 10038
                                                Tel. (212) 962-2220
                                                Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X
WILLIAM HICKS,

                                  Plaintiff,

   -against-

SAMARITAN DAYTOP VILLAGE, INC.,
MARGARITA CRESPO, and TERRENCE JUDD,

                                Defendants.
------------------------------------------------------------------------------X

---

**COMPLAINT**

---

DeTOFFOL & GITTLEMAN, Attorneys at Law
125 Maiden Lane – Suite 5C
New York, New York 10038
Tel. (212) 962-2220
Attorneys for Plaintiff